[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13975

_____

D.C. Docket No. 6:17-cr-00028-GKS-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ANTHONY CONAGE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 30, 2020)

Before ED CARNES, JULIE CARNES, and CLEVENGER,* Circuit Judges.


JULIE CARNES, Circuit Judge:

_____

* Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit,
sitting by designation.

The outcome of this criminal sentencing appeal turns on how we interpret Florida's cocaine trafficking statute, Florida Statutes § 893.135(1)(b)1.  Defendant Michael Conage, who was convicted of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g), was sentenced under the Armed Career Criminal Act (the "ACCA").  The ACCA imposes a 15-year mandatory minimum sentence for a defendant convicted under § 922(g) who has three previous convictions for a violent felony or a serious drug offense as defined by the ACCA.  *See* 18 U.S.C. § 924(e)(1).  The district court held that Conage had been convicted of three qualifying drug offenses, one of which offenses was trafficking in cocaine in violation of Florida Statutes § 893.135(1)(b)1., and the court sentenced Conage accordingly.  Conage appeals that ruling, arguing that a Florida drug trafficking conviction cannot satisfy the ACCA's definition of a serious drug offense.

The ACCA defines a "serious drug offense" as an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance."  *See* 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).  To determine whether the district court erred by sentencing Conage under the ACCA, we must decide whether trafficking cocaine in violation of Florida Statutes § 893.135(1)(b)1. satisfies the ACCA's definition of a serious drug offense.

2

Florida Statutes § 893.135(1)(b)1. enumerates six methods of trafficking cocaine: selling, purchasing, manufacturing, delivering, bringing into the state, or knowingly possessing cocaine in an amount that Florida law specifies as constituting a trafficking quantity:  28 grams or more of cocaine.  Under federal law interpreting the ACCA, a § 893.135(1) conviction can qualify as a serious drug offense under the ACCA only if each one of these six alternatives satisfies the ACCA definition of a serious drug offense.

Conage argues that a conviction based on one of these methods of violating the statute—"purchasing" a trafficking quantity of cocaine,[1]—would not qualify under federal law as a serious drug offense, which, to repeat, requires that the conduct prohibited by the particular drug statute "involve"[2] the manufacture, distribution, or possession with the intent to distribute a controlled substance.  If he is right, the district court improperly sentenced him pursuant to the ACCA because, again under federal law, if even one of the methods for violating Florida Statutes § 893.135(1) fails to constitute a serious drug offense, then the entire statute falls for purposes of being counted as a predicate conviction for ACCA purposes.  So, this Court must now decide if the purchase of a trafficking quantity

---

[1]    We use interchangeably the terms "a trafficking quantity of cocaine" and "28 grams or more of cocaine."

[2]    We discuss at greater length the definition of the term "involve."  *See infra* at 12-20.

3

of cocaine qualifies as a serious drug offense as defined by the ACCA. The answer to this question, however, depends on how Florida Statutes § 893.135(1) defines "purchasing," or, stated another way, what the State must prove in order to convict a defendant of purchasing a trafficking quantity of cocaine.

We are unable to answer the pivotal question in this appeal, however, because neither Florida Statutes § 893.135(1) nor Florida caselaw sets out the elements of the offense of trafficking by purchasing a controlled substance or otherwise defines clearly the term "purchasing" as used in the statute. We can safely assume that the question whether a conviction for drug trafficking under Florida law qualifies as an ACCA serious drug offense will arise in many cases, meaning that this issue is certain to recur. Moreover, the significance of the answer to this question is enormous. Florida Statutes § 893.135(1), which addresses drug trafficking for multiple types of controlled substances, is the most serious of all drug offenses under Florida law. Yet, if Conage is correct in his assertion that the "purchasing" of a trafficking quantity of a controlled substance does not involve possession with intent to distribute that substance, then no Florida drug trafficking conviction under § 893.135(1) can ever qualify as an ACCA predicate offense, notwithstanding that statute's status as Florida's most serious criminal drug statute. Thus, in addition to being unsettled under Florida law, the

4

issues presented by this appeal are sufficiently important to warrant certification to the Florida Supreme Court.

## I.    BACKGROUND

In September 2016, Port Orange police officers executed a search warrant at an apartment in Port Orange, Florida after receiving an anonymous tip reporting suspicious activity at the apartment and observing defendant Michael Conage conduct what the police believed were numerous drug transactions out of the apartment.  The search yielded two guns, multiple rounds of ammunition, hydromorphone (including 94 grams of hydromorphone pills and 34 grams of dilaudid) and multiple other drugs (oxycodone, amphetamine, cocaine base, and marijuana) in a bedroom near Conage's wallet and personal effects.  Having identified Conage as a convicted felon based on his driver's license and Volusia County jail photographs, the police arrested him for being a felon in possession of a firearm and ammunition and for possessing narcotics.

The police reviewed Conage's criminal history and discovered that he had at least nine felony convictions in Volusia County, Florida, including drug convictions, a conviction for grand theft of a motor vehicle, and two convictions for fleeing and eluding a law enforcement officer.  Conage was charged in a superseding indictment with possessing firearms and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e) and possessing

hydromorphone with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  A jury convicted Conage on both counts charged in the indictment after a two-day trial.

Conage's presentence report ("PSR") concluded that he should be sentenced as an armed career criminal under the ACCA, which imposes a 15-year mandatory minimum sentence when a defendant who violates § 922(g) has three previous convictions for a violent felony or a serious drug offense as defined by the ACCA. *See* 18 U.S.C. § 924(e)(1).  The PSR determined that Conage had been convicted of three state offenses that satisfied the ACCA's definition of a serious drug offense, one of which offenses was trafficking cocaine in violation of Florida Statutes § 893.135(1)(b)1.[3]

Conage objected to the PSR's conclusion that he should be sentenced under the ACCA, arguing that his cocaine trafficking conviction did not qualify as a serious drug offense under the ACCA.  Conage noted that Florida Statutes § 893.135(1)(b)1. prohibits trafficking cocaine by various means, and that federal law required the district court to assume that Conage had committed the offense by purchasing a trafficking quantity of cocaine:  an act that Conage says does not

---

[3]    Conage was arrested on this charge in April 2006 and, following his conviction, sentenced in September 2006 to serve ten years in the Florida Department of Corrections, which sentence was to run concurrently with a 10-year sentence for an unrelated felony conviction for fleeing and attempting to elude.  He was released from custody on August 9, 2015, about a year prior to his arrest on the charges that led to his conviction in the present case.

involve manufacturing, distributing, or possessing cocaine with intent to distribute, as is required for an offense to qualify as an ACCA predicate offense. Without this trafficking conviction, Conage would have only two qualifying convictions, not the three convictions necessary to trigger the ACCA. The district court disagreed with Conage's argument and sentenced him to serve 15 years as required by the ACCA.

Conage appeals his sentence. As he did in the district court, Conage argues that his cocaine trafficking conviction—which, for purposes of this appeal and regardless of the actual facts,[4] we must assume to be a conviction for trafficking by purchasing—does not qualify as a serious drug offense under the ACCA, meaning that he lacks the three qualifying convictions necessary to trigger the ACCA. The question presented by this appeal is thus whether a conviction under Florida law for trafficking by purchasing a trafficking quantity of cocaine (28 or more grams) is an offense "<u>involving</u> manufacturing, distributing, or possessing with intent to manufacture or distribute" a controlled substance, which is required to satisfy the ACCA's definition of a serious drug offense. *See* 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).

---

[4]    As set out in the Presentence Report, the actual facts underlying Conage's Florida drug trafficking conviction offer no suggestion that the charge related to a purchase by Conage of drugs. Instead, the report indicates that Conage was arrested after being found driving a vehicle with a suspended driver's license and in possession of 36 grams of cocaine.

## II.     STANDARD OF REVIEW

We review de novo the legal question whether a state conviction qualifies as a serious drug offense under the ACCA.  *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009).  When conducting our review, we are "bound by federal law when we interpret terms in the ACCA" and "bound by state law when we interpret elements of state-law crimes."  *United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015).

## III.     DISCUSSION

### A.     The Relevant Statutes: the ACCA and the Florida Drug Trafficking Statute

As noted, the ACCA requires a 15-year mandatory minimum sentence when a defendant who has three previous convictions for a serious drug offense violates § 922(g).  *See* 18 U.S.C. § 924(e)(1).  The ACCA defines a serious drug offense as an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance."  *Id.* § 924(e)(2)(A)(ii).  This Court has adopted an "expansive interpretation of the word 'involving' as used in the ACCA's definition of a serious drug offense."  *United States v. White*, 837 F.3d 1225, 1233 (11th Cir. 2016), *cert. denied*, 138 S. Ct. 1282 (2018).  Pursuant to that interpretation, a state offense can qualify as an ACCA serious drug offense even though it "do[es] not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute."  *Id.* (internal

8

quotation marks omitted).  *See also United States v. James*, 430 F.3d 1150, 1154

(11th Cir. 2005) (noting that the ACCA's use of the broad "involving language

makes clear that the term serious drug offense may include even those state

offenses that do not have as an element the manufacture, distribution, or possession

of drugs with intent to manufacture or distribute" (internal quotation marks

omitted)), *overruled on other grounds by Johnson v. United States*, 576 U.S. __,

135 S. Ct. 2552 (2015).  Consistent with this Court's precedent, the Supreme Court

recently clarified that the ACCA's definition of a serious drug offense "requires

only that the state offense <u>involve</u> the conduct specified in the [ACCA]."  *See*

*Shular v. United States*, __U.S.__, 140 S. Ct. 779, 782 (2020) (emphasis added)

(affirming this Court's precedent that a state drug offense need not "match" the

elements of a generic drug offense).

    To determine whether a defendant's state conviction is for a serious drug

offense under the ACCA, we apply what is described as a "categorical approach."

*See Robinson*, 583 F.3d at 1295.  The categorical approach requires that we

consider only the fact of the defendant's conviction and the statutory definition of

the state offense at issue, rather than the facts underlying the defendant's

conviction.  *See id.*  Under the categorical approach, a conviction  qualifies as a

serious drug offense only if the state statute under which the defendant was

convicted defines the offense in the same way as, or more narrowly than, the

9

ACCA's definition of a serious drug offense.  *See Descamps v. United States*, 570

U.S. 254, 261 (2013).  If it does not do so, the state conviction does not qualify as a

serious drug offense regardless of the actual conduct that resulted in the

defendant's conviction.[5]  *See id.*

The state statute at issue here is the Florida drug trafficking statute, Florida

Statutes § 893.135(1)(b)1.[6]  It provides that the sale, purchase, manufacture,

delivery, importation into the state, or possession (actual or constructive) of

between 28 grams and 150 kilograms of cocaine[7] constitutes the crime of

"trafficking in cocaine," which is a first-degree felony.  This drug trafficking

---

[5]    Under certain circumstances, a sentencing court may use a modified categorical approach to determine whether a state conviction qualifies as a serious drug offense.  To determine whether the conviction qualifies as a predicate conviction for sentencing enhancement purposes, this "modified" approach permits consideration of certain court documents to identify the pertinent facts that formed the basis of the conviction.  *See Descamps*, 570 U.S. at 261.  But we have held that the modified categorical approach does not apply to a conviction for trafficking opioids under Florida Statutes § 893.135(1)(c).  *See Cintron v. United States Att'y Gen.*, 882 F.3d 1380, 1385 (11th Cir. 2018) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).  The relevant language of Florida Statutes § 893.135(1)(b)1. is identical to the language of Florida Statutes § 893.135(1)(c).  The Court's ruling in *Cintron* thus applies to a conviction under § 893.135(1)(b)1., meaning that the categorical approach governs this case.  *See Francisco v. United States Att'y Gen.*, 884 F.3d 1120, 1134 (11th Cir. 2018) ("The holding of *Cintron* controls our decision because Fla. Stats. § 893.135(1)(b) and (1)(c) have substantively identical language.").

[6]    "Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine . . . but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as "trafficking in cocaine[.]"  Fla. Stats. § 893.135(1)(b)1.

[7]    A conviction based on the sale, purchase, manufacture, delivery, bringing into the state, or actual or constructive possession of 150 kilograms or more of cocaine triggers a mandatory life sentence.  Fla. Stats. § 893.135(1)(b)(2).

statute imposes a 30-year maximum sentence as well as mandatory minimum sentences and fines that increase in severity depending on the amount of cocaine involved, ranging from a 3-year minimum sentence and $50,000 fine for trafficking in 28 to 200 grams of cocaine to a 15-year minimum sentence and $250,000 fine for trafficking in 400 grams to 150 kilograms of cocaine.  Fla. Stats. § 893.135(1)(b)1., § 775.082(3)(b).

Thus, § 893.135(1)(b)1. sets out six ways in which a conviction for trafficking cocaine can be based:  selling, purchasing, knowingly possessing, manufacturing, delivering, or bringing into the state cocaine in an amount that Florida law specifies as constituting a trafficking quantity—28 grams or more of cocaine.  Nevertheless, under the categorical approach, a conviction for trafficking cocaine, or any other type of drug prohibited by Florida Statutes § 893.135(1), can qualify as an ACCA predicate only if each of the six methods set out in the statute satisfies the ACCA's definition of a serious drug offense.  *See id.*  In other words, whether a state conviction for trafficking illegal drugs in violation of § 893.135(1) qualifies as a serious drug offense under the ACCA is an all-or-nothing proposition.  If even one method of sustaining a drug trafficking conviction does not qualify as a serious drug offense, then the entire statute is disqualified as a predicate conviction for ACCA purposes.

11

Conage acknowledges that our Court has held that as to the language in § 893.135(1)(b)1. providing that the possession of a threshold amount of cocaine constitutes drug trafficking, the Florida statute satisfies the ACCA provision requiring a state "serious drug offense" to criminalize conduct involving possession with the intent to distribute a controlled substance. 18 U.S.C. § 924(e)(2)(A)(ii). The specific question before this Court then is whether the <u>purchase</u> of a trafficking quantity of cocaine under Florida's drug trafficking statute likewise involves the possession of that substance.

**B.     Precedent Interpreting the Term "Involves" in the ACCA**

As relevant to this appeal, the ACCA defines a "serious drug offense" as "an offense under State law involving [the] . . . possessing with intent to . . . distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). As to the term "involve," the Supreme Court has recently spoken, as has this Court in its previous interpretation of the Florida drug trafficking statute and another similar drug statute. We turn to those cases.

1.     The Supreme Court's Decision in *Shular v. United States*

In *Shular v. United States*, ___U.S.___, ___, 140 S. Ct. 779, 781 (2020), the district court imposed a 15-year sentence under the ACCA based on the defendant's prior Florida convictions under Florida Statute § 893.13(1)(a), which

12

"makes it a crime to 'sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance.'" *Id*. at ___, 140 S. Ct. at 784. Our Court had affirmed Shular's ACCA-enhanced sentence, applying our circuit precedent that a "serious drug offense," as defined in the ACCA's § 924(e)(2)(A)(ii), requires only that the activities addressed in the prior predicate state drug offense involve certain activities, and not that it match the elements of a generic drug offense. *United States v. Shular*, 736 F. App'x 876, 877 (11th Cir. 2018) (applying *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014)).

The Supreme Court granted certiorari to resolve a split in the circuit courts as to whether the descriptive terms used in § 924(e)(2)(A)(ii)'s "serious drug offense" definition (1) require a comparison to the elements of a generic drug offense[8] or (2) merely identify or describe activities or conduct that the state drug offense involves. *Shular*, ___U.S. at ___, 140 S. Ct. at 783–84. In affirming this Court's decision, the Supreme Court told us two important things about the terms in this ACCA definition: (1) "the terms in § 924(e)(2)(A)(ii)—'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance'—are unlikely names for generic offenses" and instead "[t]hose words undoubtedly can be used to describe conduct," and (2) "by speaking of activities a

---

[8]    The Supreme Court explained that a generic version of a crime meant "the elements of the offense as commonly understood." *Shular*, ___U.S. at ___, 140 S. Ct. at 783 (quotation marks omitted).

13

state-drug offense 'involves,' § 924(e)(2)(A)(ii) suggests the descriptive terms immediately following that word 'involv[es]' identify conduct." *Id.* at ___, 140 S. Ct. at 785.

The Supreme Court also clarified that the ACCA's definition of "serious drug offense" "requires only that the state offense involve the conduct specified in the federal statute [the ACCA]; it does not require that the state offense match certain generic offenses." *Id*. at ___, 140 S. Ct. at 782. The Supreme Court confirmed that § 924(e)(2)(A)(ii) calls for application of a categorical approach, but one that determines whether state drug offenses "involve,"—that is "necessarily requir[e]"—the types of conduct identified in § 924(e)(2)(A)(ii). *Id.* at ___, 140 S. Ct. at 785–86.[9]

Shuler had argued that because Florida's § 893.13(1)(a) statute does not include a mens rea requirement, while most other states' drug laws require that the defendant know the substance is illicit, the Florida statute did not qualify as a serious drug offense under the ACCA. *Id.* at ___, 140 S. Ct. at 787. The Supreme Court characterized the parties' opposing positions as being a choice between applying the ACCA "to all offenders who engaged in certain conduct" versus applying the ACCA "to all who committed certain generic offenses." *Id.*

---

[9] In *Shular*, "the parties agree[d] that 'involve' means 'necessarily requir[e].'" ___U.S. at ___, 140 S. Ct. at 785 (second alteration in original).

14

(emphasis added).  Thus, while "both parties' interpretations of 18 U.S.C.

§ 924(e)(2)(A)(ii) achieve a measure of consistency," the Court was "persuaded

that Congress chose the former."  *Id.* at ___, 140 S. Ct. at 787 (emphasis added).

Further, Shular had argued that the terms in the ACCA's definition referred

to "elements," from which he inferred that there must also be "elements" in the

state drug offense.  Rejecting Shular's argument, the Supreme Court held that the

terms in the ACCA definition referred to conduct, not elements.  The Court

explained:

> (1)   "if Congress was concerned that state drug offenses lacked clear, universally employed names, the evident solution was to identify them instead by conduct" and to use "involving" rather than "is"; and
>
> (2)   "Section 924(e)(2)(A)(ii)'s text and context leave no doubt that it refers to an offense involving the <u>conduct</u> of 'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.'  Because those terms describe conduct and do not name offenses, a court applying § 924(e)(2)(A)(ii) need not delineate the elements of generic offenses."

*Id.* at ___, 140 S. Ct. at 786–87 (emphasis in original).

Using this categorical approach outlined in *Shular*, our focus in this case

therefore is on the conduct that the "purchasing" element of Florida Statute

§ 893.135(1)(b)1. prohibits and on whether that conduct necessarily involves the

conduct prohibited in the serious drug offense provision of the ACCA.  *Id*. at ___,

15

140 S. Ct. at 787.  As to the latter question, we have precedent that assists us in this inquiry, and we turn to that precedent now.

### 2.    Eleventh Circuit Precedent

Our Court has not previously addressed whether the "purchasing" element in Florida's drug trafficking statute, § 893.135(1)(b)1., meets the requirements for a serious drug offense set out in the ACCA, but we have addressed the question whether that statute's "possession" element does so.  And we determined that it did.

To repeat, one of the six acts prohibited in the Florida drug trafficking statute is the knowing actual or constructive possession of 28 grams or more of cocaine.  In *United States v. James*, 430 F.3d 1150 (11th Cir. 2005), the defendant had been sentenced under the ACCA based, in part, on a prior conviction under Florida Statutes § 893.135(1)(b)1. for possessing between 200 and 400 grams of cocaine in violation of § 893.135(1)(b)1.  *See id.* at 1152.  The sentencing court determined that the conviction did not qualify as a serious drug offense under the ACCA because § 893.135(1)(b)1. "did not include as an element of proof that [the defendant] had intended to distribute [the] 200 to 400 grams of cocaine" that he possessed.  *Id.*

This Court reversed, concluding that trafficking by possessing 28 grams or more of cocaine, in violation of Florida Statutes § 893.135(1)(b)1., qualifies as an

ACCA serious drug offense because the statute involves possession of a controlled substance with the intent to distribute it. *Id.* at 1156. We noted that "[t]he language of the Florida statute need not exactly match the ACCA's definition of a 'serious drug offense,'" as the ACCA's "definition broadly includes any offense 'involving' the manufacture, distribution, or possession with intent to manufacture or distribute." *Id.* at 1155 (emphasis added). Further, "[t]his 'involving' language makes clear that the term 'serious drug offense' may include even those state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute." *Id.* On that score, we noted that like Georgia, Florida's drug trafficking statute requires that "the defendant must be in possession of a significant quantity of drugs, namely 28 grams, before the state deems the offense to be trafficking," *id.* at 1155, and that "Florida's drug trafficking statute [] 'infers an intent to distribute once a defendant possesses a certain amount of drugs.'" *Id.* at 1154.

Further explaining its rationale, the Court in *James* observed that Florida's three-tiered drug offense scheme includes: (1) the lowest tier, which prohibits possession of any amount of a controlled substance, (2) a middle tier that prohibits possession with intent to distribute a controlled substance, and (3) the highest tier, which prohibits trafficking in a controlled substance, including trafficking by possessing a certain quantity of the substance. *See id.* at 1154. The Court

17

reasoned that, by placing trafficking at the top of this three-tiered system and deeming it a more serious crime than possession with intent to distribute, Florida law "infers an intent to distribute once a defendant possesses" a sufficiently large quantity of a controlled substance—which, in the case of cocaine, is 28 grams or more.  *See James*, 430 F.3d at 1155.  That is, Florida's three-tiered scheme "recognizes that someone who is convicted of drug trafficking . . . plans on distributing and thereby trafficking those drugs."  *See id.* at 1154 (internal quotation marks omitted).  If federal law does not also infer an intent to distribute, the Court noted, an anomaly would result because the most serious drug offense in Florida law—trafficking—would not qualify as a serious drug offense under the ACCA while a lesser Florida drug offense that involved a lower quantity of drug, but whose elements matched exactly the federal statute, would qualify.  *Id.* at 1155.  In short, we concluded that "the Florida statute falls within the broad definition of a 'serious drug offense.'"  *Id.*

Our Court recently reaffirmed the reasoning of *James* and applied its holding to a conviction for trafficking by possession of cocaine under an Alabama trafficking statute that is nearly identical to Florida's trafficking statute.  *See United States v. White*, 837 F.3d 1225 (11th Cir. 2016), *cert. denied*, 138 S. Ct. 1282 (2018).  The defendant in *White* had a prior conviction for trafficking by possessing 28 grams of cocaine in violation of Alabama Code § 13A-12-231,

18

which provides that a person unlawfully traffics in cocaine if he "knowingly sells, manufactures, delivers, or brings into [the] state, or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine[.]"  Ala. Code § 13A-12-231(2).  As in Florida, the Alabama statute is part of a three-tiered scheme for punishing drug offenses that includes, from the least serious offense to the most serious offense:  (1) possession of a controlled substance, (2) distribution or possession of a controlled substance with intent to distribute, and (3) trafficking in a controlled substance, with trafficking being inferred only when the controlled substance involved in the offense is of a minimum quantity level.  *See* Ala. Code §§ 13A-12-211, 212.

Applying *James*, this Court rejected the defendant's argument in *White* that his Alabama cocaine trafficking conviction was not a serious drug offense under the ACCA because it did not necessarily involve "manufacturing, distributing, or possessing with [the] intent to manufacture or distribute" cocaine.  *See White*, 837 F.3d at 1229 (quoting the ACCA's definition of a serious drug offense).  Pursuant to *James*, we explained, an intent to distribute could be inferred from the large quantity of cocaine that the statute required a defendant to possess.  *See id.* at 1232.  Failing to make that inference, we further observed, would result in the anomaly the Court sought to avoid in *James* whereby trafficking, the most serious drug crime under Alabama law, would not qualify as an ACCA serious drug offense

19

while the less serious crime of possession with intent to distribute would qualify. *See id.* at 1233. We therefore held that the defendant's Alabama conviction for trafficking by possessing 28 grams or more of cocaine satisfied the ACCA's definition of a serious drug offense. *See id.* at 1235.

## C.    Interpretation of Florida Law Concerning the Conduct of Purchasing a Trafficking Quantity of a Controlled Substance

Thus, trafficking by purchasing cocaine in violation of Florida Statutes § 893.135(1)(b)1. might qualify as a serious drug offense under the ACCA even though the act of purchasing cocaine is not expressly enumerated in the ACCA's definition of a serious drug offense. Our Court having previously determined that possession of a trafficking amount of cocaine under Florida's drug trafficking statute constitutes possession with the intent to distribute for purposes of the ACCA, the only question now before us is whether the purchase of a trafficking quantity of cocaine likewise yields the same conclusion. To speak in more precise legal terms, we must decide whether the purchase of a trafficking quantity of drugs, as specified by the Florida drug trafficking statute, "involves" the possession of that drug, as that term is defined in the ACCA. As noted, this is a case of first impression for us.[10]

---

[10]    In *United States v. Shannon*, 631 F.3d 1187 (11th Cir. 2011), we were required to address the question whether the Florida drug trafficking statute at issue here, Florida Statutes § 893.135(1)(b)1., constituted a "controlled substance offense" under the federal Sentencing Guidelines. The Guidelines characterize a defendant as a career offender, subject to an enhanced sentence, when that defendant has at last two prior felony convictions of either a crime of

Under our Court's precedent and pattern jury instructions, "possession" includes both actual and constructive possession.  The pattern instructions provide that "'actual possession' of a thing occurs if a person knowingly has direct physical control of it" and that "'constructive possession' of a thing occurs if a person does not have actual possession of it, but has both the power and the intention to take control over it later."  Eleventh Circuit Pattern Instructions (Criminal Cases) § S6 (Feb. 2020).  We have stated that "[c]onstructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control."  *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009) (quotation marks omitted).

---

violence or a controlled substance offense.  *See* U.S.S.G. § 4B1.1(a).  The Guidelines define a controlled substance offense as a felony offense "that <u>prohibits</u> the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b) (emphasis added).  The Guidelines thus require that the statute prohibit specified acts and does not include "purchase" as one of the prohibited acts.  Thus, concluding that "the plain language of § 4B1.2(b) control[led]" our decision and rejecting an argument that "purchase" was synonymous with "possession," we held that the defendant's Florida conviction for trafficking cocaine did not constitute a controlled substance offense.  *Shannon*, 631 F.3d at 1189.

As noted *infra,* unlike the Guidelines, the ACCA does not require that the predicate drug conviction be based on a statute that expressly prohibits one of the specified acts set out in the ACCA.  As noted, in *James* we held that "[t]he language of the Florida statute need not exactly match the ACCA's definition of a 'serious drug offense,'" as the ACCA's "definition <u>broadly includes</u> any offense '<u>involving</u>' the manufacture, distribution, or possession with intent to manufacture or distribute."  430 F.3d. at 1155 (emphasis added).  Thus, the ACCA's definition of a serious drug offense is broader than the guidelines definition of a controlled substance offense.  *See White*, 837 F.3d at 1235 (recognizing that "there is general agreement among the circuits that the ACCA's definition of a serious drug offense is broader than the Guidelines definition of a drug trafficking or a controlled substance offense").  And the question before us in this case is whether, under the Florida drug trafficking statute, the purchase of a trafficking quantity of cocaine "involves" the actual or constructive possession of that drug, as set out in the ACCA, not the Guidelines.

21

1.     Elements of "Trafficking by Purchase"

The initial question for us to decide then is whether "purchase" under Florida Statutes § 893.135(1) involves "possession" as federal law under the ACCA defines that term.  That necessarily means we have to understand how Florida law defines the term "purchase."  Determining what conduct purchasing necessarily includes under this Florida trafficking statute, however, has proven to be an uncertain task:  hence, our need for guidance by the Florida Supreme Court.  In the first place, not only does the statute fail to set out the elements for a "purchase," but the Florida pattern instructions for this offense nowhere define the term.  The instructions do define "sell":  "'Sell' means to transfer or deliver something to another person in exchange for money or something of value or a promise of money or something of value."  Fla. Std. Jury Instr. (Crim) § 25.7(a) (2019).

From that, one might reasonably assume that "purchase" would be defined as the converse of "sell," meaning that a purchaser would have both paid for and received delivery.  Indeed, common dictionary definitions suggest that a completed purchase requires both payment for and delivery of the purchased item.  For example, Webster's defines the term purchase to mean "to <u>obtain</u> by paying money or its equivalent."  Webster's II New Riverside University Dictionary 955 (1988) (emphasis added).  The Oxford English Dictionary similarly defines the term

22

purchase to mean "to <u>acquire</u> in exchange for payment in money or an equivalent." Oxford English Dictionary (3d ed. 2007) (emphasis added). If either definition is applicable to Florida Statutes § 893.135(1), a defendant would presumably be required to pay for and obtain or acquire a trafficking quantity of cocaine in order to violate the statute by purchasing cocaine. And obtaining or acquiring cocaine would certainly seem to involve possession of that cocaine. Moreover, even if payment is all that is required to constitute a completed purchase under the Florida statute, the question would then become whether that conduct could still constitute constructive possession, which, to repeat, occurs if a defendant has the power and intent to exercise dominion or control over the controlled substance.

Yet, the above inferences are derived from a dictionary definition of "purchase" that is not necessarily synonymous with the meaning that Florida law ascribes to the term. All of which means that, absent some definitive guidance from Florida caselaw, the meaning of the term "purchase" in the Florida trafficking statute remains unclear. Unfortunately, the Florida caselaw addressing convictions based on trafficking by purchase is sparse and discussion in cases concerning other methods by which a controlled substance can be trafficked offer, at best, vague hints as to the meaning of the term. Ultimately, in order to decide this case, we need to be able to understand what elements must be proved to convict a defendant of purchasing a trafficking quantity of drugs under the Florida drug trafficking

23

statute, § 893.135(1).  And, as explained below, we are unable to do so under the existing caselaw.

First, some background as to the statutory options at the State's disposal in this context.  As noted, Florida Statutes § 893.135(1) characterizes as drug trafficking any one of six acts taken with regard to a trafficking quantity of drugs, two of which are possession and purchasing.  Although this statute makes no express provision for an attempted violation, a person can be convicted of attempted trafficking pursuant to a default statute—Florida Statutes § 777.04— which is Florida's general statute addressing an attempt, solicitation, or conspiracy to commit a crime.  *Suarez v. State*, 635 So. 2d 154, 155 (Fla. 2d DCA 1994). Section 777.04 provides that "[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . ."  Conviction pursuant to Florida's general attempt statute, however, results in a lower sentencing range than would conviction under the substantive statute for the offense.  *Suarez*, *id*.  Thus, if the offense attempted is a felony of the first degree, as is the Florida drug trafficking statute, the offense of criminal attempt to violate that statute becomes a felony of the second degree, § 777.04(4)(c), and the penalty for that attempt is a

24

maximum penalty of 15 years, with no mandatory-minimum applicable, § 777.082(6)(b)(2).

Although not addressing an attempt, the Florida drug trafficking statute does address a conspiracy to traffic in drugs, stating that "[a]ny person who agrees, conspires, combines, or confederates with another person to commit any act prohibited by [the substantive provisions of the trafficking statute] commits a felony of the first degree and is punishable as if he or she had actually committed such prohibited act." Fla. Stats. § 893.135(5). Thus, a completed substantive act under the trafficking statute or a conspiracy to commit one of the listed substantive acts receives the same punishment; a conviction based on an attempt to violate the statute under § 777.04, however, triggers a reduced punishment. *Suarez*, 635 So. 2d at 155 (affirming the mandatory-minimum sentence required under § 893.135 for the defendant's conviction for conspiracy to traffic in drugs, but reversing that same sentence for his conviction for attempting to traffic in drugs). In the case before us, Conage was convicted of actually trafficking in drugs under § 893.135(1), not of attempting to traffic in drugs.

In the present case, none of the authorities cited by Conage define the term "purchase" as used in Florida Statutes § 893.135(1). In fact, the parties have cited only one case that actually involves a trafficking conviction based on purchasing drugs: *State v. Swider*, 654 So. 2d 562, 563 (Fla. 4th DCA 1995). Yet, the issue

25

before the *Swider* court did not concern the definition of "purchase," and it offers

us no help in defining that term in this case.[11]

Nor has a review of cases involving a drug trafficking conviction not based

on purchase enabled us to identify what elements a trafficking offense based on

purchase would include.  One Florida case has suggested in dictum that, in the

context of a drug transaction, "[t]o receive or obtain something in exchange for

compensation is to purchase." *Sobrino v. State*, 471 So. 2d 1333, 1334 (Fla. 3d

DCA 1985).[12]  Like the above-quoted dictionary definition of "purchase," the

*Sobrino* definition suggests that a purchase offense would involve not only paying

for the drugs, but also receiving them.  Yet, *Sobrino*, which involved a drug

trafficking conviction based on a reverse sting,[13] was issued before the Florida

---

[11]    In *Swider*, the two defendants—Swider and Swidersky—pled guilty to jointly purchasing cocaine in an amount (45 grams) that met the threshold for conviction under the trafficking statute, but they sought a more lenient sentence than that statute permits, arguing that they were first offenders and drug addicts who had purchased the drugs for their own and their friends' personal use, not for resale.  654 So. 2d at 563.  The Florida Fourth District Court of Appeals rejected the argument.  *Id*.  *Cf. White*, 837 F.3d at 1230 (noting that our precedent has held that possession of a controlled substance "'for someone else's use' necessarily involves possession 'with the intent to distribute' it to another person" for purposes of federal law.)  *Swider* nowhere discusses the question before us—whether one can be guilty of purchasing a drug under § 893.135 without also actually or constructively possessing that drug.

[12]    In *Sobrino*, the defendant had not yet handed over the money nor been handed the drugs when he was arrested.

[13]    In the familiar jargon of the drug interdiction world, a "reverse sting" occurs when an undercover law enforcement officer negotiates the sale of illegal drugs to the putative defendant, who, in this scenario, becomes the purchaser.

trafficking statute was amended to include purchasing as a means of trafficking. Moreover, the focus of *Sobrino* was not on whether the defendant might have met the elements of an as-yet-not-enacted amendment of the trafficking statute outlawing the purchase of drugs. Instead, in reversing the conviction, the court focused on the fact that the defendant had been charged with the wrong offense: trafficking based on delivery. The charge alleged that the defendants "did knowingly take or accept delivery for compensation and aided, abetted, counseled and procured the delivery" of a trafficking quantity of cannabis. *Id.* at 1334. The Florida appellate court noted that a putative purchaser does not aid and abet delivery; instead, "[a] buyer or receiver commits the crime of possession or attempted possession, not delivery." *Id.* at 1335.

In *Cunningham v. State*, 647 So. 2d 164 (Fla. 1st DCA 1994), the defendant was convicted of purchasing marijuana in violation of § 893.13,[14] not the drug trafficking statute § 893.135(1). Nevertheless, we assume the definition of the term "purchase" would be the same in both statutes. The defendant had been arrested after he "pulled out 'a roll of money'" to purchase the marijuana and the undercover officer had displayed the marijuana to be sold, but before the officer

---

[14]    Florida Statutes § 893.13, which is a less serious drug offense than is drug trafficking under § 893.135(1), was amended in 1993 to delete "purchase" as a potential means of committing the offenses prohibited by that statute. *See* Fla. Stats. § 893.13 (1994).

27

had laid hands on the money tendered.  The Florida appellate court reversed the conviction "because [defendant] was arrested before the transaction could be completed."  *Id.* at 166.  The appellate court concluded that there was sufficient evidence of defendant's possession of marijuana with intent to purchase it, but not of an actual purchase.  *Id.*  A member of the panel dissented, arguing that "a completed sale" had occurred even though the defendant had not "physically hand[ed] [over] money to the officers.  The sale with which [defendant] was charged took place at the point in time when officers delivered the marijuana to [defendant], and [defendant] agreed to pay for the marijuana . . . . [O]nce the officers delivered the marijuana to [defendant] following [defendant's] agreement to pay for it, the contract was no longer executory and a sale had taken place."  *Id.* at 167.

A plausible take-away from this case is that both the majority and the dissent concluded that a purchase conviction requires the drugs to have been delivered to the defendant for the purchase to be complete.  In addition, the majority also required the defendant to have actually paid for the drugs for the transaction to be considered a purchase.  In short, *Cunningham* arguably suggests that a purchase conviction requires that the transaction be completed, and a completed transaction would require the purchaser to obtain possession of the purchased drug.  Likewise, in *Amaya v. State*, 782 So. 2d 984 (Fla. 3d DCA 2001), the appellate court focused

obliquely on the notion of a "completed sale" in upholding the defendant's conviction for trafficking under § 893.135(1). *Id.* at 985. The case involved a reverse sting in which the defendant purchaser had both paid for and been handed the drugs before his arrest. The opinion does not indicate whether the trafficking charge was based on the defendant's possession or his purchase of drugs, but it concluded that the defendant had possession and that "the evidence established a completed sale." *Id.* It is uncertain, though, whether the State had relied on a purchase theory—with the appellate court suggesting that a completed sale was necessary to support such a theory—or whether the State had charged only trafficking by possession.

It is Conage's position that proof of trafficking by purchase does not require the State to prove that the defendant ever possessed the drugs at issue, which, if true, would mean that it would be easier for the State to prove a purchase than to prove possession and one could presumably expect to see a lot more purchase convictions in Florida caselaw. Yet, interestingly, the *Cunningham* decision suggests that perhaps the opposite is true. That is, in the context of a transaction in which the defendant is the recipient of the drugs, perhaps the State can more readily prove possession than purchase if the latter requires both possession and the exchange of money, while the offense of possession does not require the exchange of money or that there be any transaction at all.

29

Some Florida cases do involve a conviction for the attempted purchase of illegal drugs. *See, e.g., Foster v. State*, 160 So. 3d 948, 950 (Fla. 5th DCA 2015); *Cardi v. State*, 685 So. 2d 842, 843 (Fla. 2d DCA 1995). But those cases do not discuss the elements of attempted purchase, which discussion might provide some enlightenment as to the elements of a completed purchase offense. Specifically, if a purchase conviction requires a completed transaction—that is, both payment and receipt (or control over the disposition) of the drugs—then an attempted purchase offense would presumably lack one or both of those components. On the other hand, if a purchase conviction requires only an uncompleted transaction, then there must be some other means by which Florida law differentiates a purchase from an attempted purchase offense.

All these observations aside, though, we feel little confidence in the above suppositions and require the assistance of the Florida Supreme Court to instruct us as to the elements of "purchase" under the Florida drug trafficking statute. Specifically, does the statute require a completed purchase; that is, a transaction in which the purchaser would have actual or constructive possession of the substance in question? If not, what are the elements of a conviction based on purchase?

2.    Aiding and Abetting a Purchase Under the Florida Trafficking Statute

The above discussion addresses the uncertainty concerning what acts the putative purchaser of drugs must commit in order to be convicted of the

30

substantive crime of trafficking drugs via a purchase.  In support of his argument that a purchase conviction does not require the defendant to have had actual or constructive possession of the illegal drug, Conage cites a case that discusses the aiding and abetting of illegal drug activity:  *Ras v. State*, 610 So. 2d 24 (Fla. 2d DCA 1992).  The cited case does not address a purchase conviction, but Conage notes that it contains language suggesting that one might be able to aid and abet a drug purchase without having also aided and abetted possession of that drug.  He argues that this language must mean that a purchase conviction does not require the defendant to actually or constructively possess the illegal substance at issue.

As to Florida law concerning aiding and abetting, Florida's Principal in First Degree statute provides in pertinent part:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Florida Statutes § 777.011.  In short, like its equivalent federal aiding and abetting statute, codified at 18 U.S.C. § 2(a), the Florida statute punishes aiders and abettors the same as principal offenders.  Both statutes require that the aider and abettor "have the intent to aid the commission of a crime and do some act that contributed to the offense."  *Boston v. United States*, 939 F.3d 1266, 1271 (11th Cir. 2019).

31

In *Ras*, the case relied on by Conage, the defendant was convicted of trafficking over 28 grams of cocaine in violation of Florida Statutes § 893.135(1)(b)1. The evidence showed that defendant Ras and his cohort, Raymond Frank, met with undercover detectives in the latter's motel room. Frank told the detectives that Ras wanted to purchase cocaine. Ras then negotiated the price for the three ounces of cocaine. The detectives agreed, and set up a time to meet again to deliver the cocaine to Ras and his associate. Ras returned at the appointed hour, this time accompanied by a man named Griswold. Griswold had the money and, after Ras gave Griswold a pocketknife to open the bag of cocaine, Griswold took a sample of the cocaine, snorting and tasting it. Griswold then gave the detective the money and picked up the package of cocaine. Immediately thereafter, both Ras and Griswold were arrested. *Ras*, 610 So. 2d at 25.

The trial judge at Ras's trial for trafficking determined that the evidence supported only a trafficking by possession charge[15] and he so instructed the jury, telling them that, to convict, they had to find that Ras either actually or constructively possessed the cocaine. The jury convicted. On appeal, the Florida Second District Court of Appeals reversed. It noted that, as Ras never physically held the cocaine, he could be convicted of possession only if he had dominion or

---

[15]    In its indictment, the State had included all of the acts set out in § 893.135(1), except for "purchase." *Ras*, 810 So. 2d at 25.

control over the cocaine; that is, if he constructively possessed the drugs. As to that question, Ras had been present at both meetings with the detectives, negotiated the price for the cocaine, and, after his arrest, had told the detectives that he and Griswold were taking the cocaine to a buyer in Sarasota. The district court of appeals did not find that the above evidence would have been insufficient, as a factual matter, to prove that Ras had the ability to exercise dominion or control over the cocaine just purchased from the undercover agents. Yet, because of its interpretation of a unique Florida evidentiary rule—the *corpus delicti* rule[16]—the appellate court ruled that the trial court should not have relied on Ras's post-arrest admission and that, without this admission, there was insufficient evidence to establish Ras's constructive possession. *Id.*

Accordingly, the appellate court reversed Ras's conviction for trafficking by possession to the extent that this conviction was based on Ras's actual or constructive possession, himself, of the cocaine. Nothing in its analysis of that issue affects the question at issue in this case, which is what are the elements of trafficking by purchase. The court then proceeded to consider whether the evidence could support a possession conviction for Ras based on his aiding and abetting Griswold's possession of the cocaine. With no explanation other than a

---

[16]    For an explanation of this evidentiary rule followed in Florida, *see Burks v. State*, 613 So. 2d 441 (Fla. 1993).

citation to cases holding that aiding and abetting the sale of drugs does not necessarily mean that one has aided and abetted their possession, the appellate court concluded that Ras's conduct—his meeting with undercover agents to purchase drugs, his negotiation of the price of the drugs, his subsequent meeting with agents to actually make the purchase, and his assistance to Griswold at this meeting—did not aid and abet Griswold in his ultimately successful possession of the cocaine. *Id*. at 26.

As a ruling evaluating the validity of a possession conviction, the court's above discussion is not relevant to the precise question before us. However, it is when the appellate court next opined about a charge on which Ras had not been indicted and that was not before the court—whether Ras's conduct could have constituted the aiding and abetting of a purchase—that the court made the statement on which Conage now seizes. The statement: that although Ras did not aid and abet Griswold's possession, he "likely" aided and abetted the latter's purchase of the cocaine. *Id.* From this dicta, Conage argues that the appellate court was necessarily saying that one can be guilty of purchasing drugs without also being guilty of possessing—constructively or actually—those drugs.

At first glance, that is not an unreasonable inference to draw from this dicta in *Ras*. But the question before us is whether under Florida law, one can be found guilty of purchasing illegal drugs without also being in at least constructive, if not

34

actual, possession of the substance.  And the dicta provided by the Second District Court of Appeals in *Ras* does not provide a sufficient or responsive answer to that question.[17]  In the first place, there is contrary dicta from the Third District Court of Appeals and the First District Court of Appeals, in, respectively, *Sobrino* and *Cunningham*, discussed *supra.*

Moreover, in reaching its conclusion that Ras's actions had not aided and abetted his cohort Griswold in the latter's possession of the purchased cocaine, *Ras* is seemingly inconsistent with governing Florida principles concerning aiding and abetting.  The Florida Supreme Court has held that in order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some other act to assist the other person in actually committing the crime.  *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988); *accord Banks v. State*, 790 So. 2d 1094, 1098 n.2 (Fla. 2001).  The Florida pattern jury instructions provide that a defendant who has helped another person commit or attempt to commit a crime is treated as a principal "if (1) the defendant had a conscious intent that the criminal act be done and (2) the defendant did some act or said some word which was intended to and which did incite, cause, encourage,

---

[17]    As best we can determine, in the twenty-eight years since its issuance, *Ras* has never been cited by a Florida appellate court for the proposition that Conage attributes to it.

assist or advise the other person or persons to actually [commit] [attempt to commit] the crime . . . ."  Fla. Std. Jury Instr. (Crim) § 3.5 (a) (2019).

The appellate court in *Ras* concluded that Ras could not be convicted of aiding and abetting Griswold's possession of the cocaine in question, but that conclusion does not seem to square with the Florida Supreme Court's pronouncements on aiding and abetting, as set out in the above caselaw and in the pattern instructions.  That is, Ras clearly performed acts that assisted his cohort Griswold in coming into possession of cocaine:  Ras attended the first meeting with the undercover detectives, without Griswold, where he negotiated the price for the drugs to be purchased; Ras arranged to meet again with the undercover officers to purchase the cocaine; Ras attended that second meeting, this time with Griswold; and he assisted Griswold in testing the cocaine, who then paid for and received the cocaine.  As to whether Ras had "a conscious intent that the criminal act be done," he clearly did.  Meeting with the detectives, negotiating a price, and meeting once again with them to purchase the cocaine made clear Ras's intent.  *Cf. State v. Dent*, 322 So. 2d 543, 544 (Fla. 1975) (the defendant, who was a go-between in the sale of drugs to an undercover agent, was properly convicted of aiding and abetting the sale, even though he received no compensation from the seller, because the defendant "took an active part in arranging the sale" and "the sales would not have occurred but for [defendant's] arrangements").

36

So then on what ground did the appellate court dismiss what seems to be a natural conclusion that Ras had assisted Griswold in the latter's coming into possession of the cocaine?  As noted, the appellate court cited three cases[18] holding that a defendant does not aid and abet possession of illegal drugs merely because he has aided and abetted the sale of those drugs.  *Ras*, 610 So. 2d at 26.  Yet, each of these cases dealt with a defendant who had been convicted of possession based on the assistance he provided in selling illegal drugs.  As the cases point out, when one helps a seller get rid of his drugs, one is not helping the seller possess the drug; instead, one is helping the seller dispose of the drug.  For example, in *Daudt*, the defendant helped the seller make his sale, but the defendant never himself possessed the marijuana.  *Daudt v. State*, 368 So. 2d 52 (Fla. 2d DCA 1979).  Hence, the appellate court there concluded that, while he was guilty of aiding and abetting a sale, the defendant was not guilty of aiding and abetting the seller in possessing the illegal drugs.  As the court pointed out, "[The seller] already possessed the marijuana; there is no showing that appellant was of any help to [the seller] in either acquiring it or retaining possession of it.  On the contrary, [the defendant] aided [the seller] in Divesting himself of it."  *Id.* at 54.  In contrast, when a defendant helps a cohort come into possession of drugs, he has helped that

---

[18]    *Stephenson v. State,* 371 So. 2d 554 (Fla. 2d DCA 1979); *Daudt v. State*, 368 So. 2d 52 (Fla. 2d DCA 1979); and *Kickasola v. State*, 405 So. 2d 200 (Fla. 3d DCA 1981).

cohort <u>possess</u> the drugs and, so long as the defendant has done so with the intent to achieve that result, the Florida standard for proving aiding and abetting would seemingly have been met.

Yet, regardless of whether *Ras*'s dicta correctly applies Florida law concerning the standards for determining when a defendant has <u>aided and abetted</u> <u>possession</u>, a careful parsing of *Ras* reveals that it really has nothing to do with the fundamental question before us—whether a <u>purchase</u> conviction requires the defendant to actually or constructively possess illegal drugs. *Ras* never analyzes that issue. To do so, it would have had to determine whether Griswold, the individual who paid for the drugs, would have also been required to come into possession of the cocaine in order to be convicted of purchasing. Not surprisingly, *Ras* never poses that question, and for good reason, as Griswold clearly did both: he paid for the drugs and he possessed them. Thus, no matter how broadly or narrowly one defines "purchase," there was no question that Griswold's conduct would have met any definition of purchase. The *Ras* dicta dealt with a different issue: whether a defendant who assists another person in obtaining drugs via a purchase can ever be convicted of aiding and abetting that other person's possession of the drugs. *Ras* said "no" on the facts before it, even though the assistance by Ras that helped Griswold make the purchase was the same assistance that helped Griswold gain possession of the drugs. But whether right or wrong,

38

that dicta does not tell us whether a purchase conviction can be sustained if the purchaser has not actually come into possession of the drugs prior to his arrest. In short, *Ras* provides analysis about aiding and abetting possession, not analysis about the elements of a purchase offense.

Finally, that we have questioned whether the dicta in *Ras* represents the law of Florida on the precise question before us should not suggest that we take a position as to whether a purchase conviction under Florida law requires the defendant to have actually or constructively possessed the drugs in question. Obviously, that is a matter to be determined solely by the Florida Supreme Court, whose guidance we will gratefully and respectfully accept.

## III.    QUESTIONS CERTIFIED TO THE FLORIDA SUPREME COURT

The certification procedure is "a valuable tool" that "helps save time, energy, and resources and produces authoritative answers to novel or unsettled questions of state law." *World Harvest Church*, *Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 960–61 (11th Cir. 2009) (internal quotation marks omitted). Florida's constitution expressly provides for certification to the Florida Supreme Court of state law questions that are "determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, § 3(b)(6). Consistent with that grant of authority, this Court has found certification to the Florida Supreme Court warranted where an appeal "depends on

39

resolution of questions of unsettled Florida law" that "will affect many other cases." *Tobin v. Michigan Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005) ("Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law."). For the reasons discussed above, this case falls into that category. Accordingly, we certify to the Florida Supreme Court the following questions:

> How does Florida law define the term "purchase" for purposes of Florida Statutes § 893.135(1)? More specifically, does a completed purchase for purposes of conviction under § 893.135(1) require some form of possession—either actual or constructive—of the drug being purchased?

Our statement of the certified questions is merely suggestive and is not meant to limit the inquiry of the Florida Supreme Court. As this Court has explained many times, "the particular phrasing used in the certified question[s] is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case." *Miller v. Scottsdale Ins. Co.*, 410 F.3d 678, 682 (11th Cir. 2005) (quoting *Martinez v. Rodriguez*, 394 F.2d 156, 159 n. 6 (5th Cir. 1968))[19] (internal quotation marks omitted). "This latitude extends to the Supreme Court's

---

[19]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

40

restatement of the issue or issues and the manner in which the answers are given."

*Id.* To assist the Florida Supreme Court in considering the case, the entire record, along with copies of the briefs of the parties, is transmitted herewith.

**QUESTIONS CERTIFIED.**