[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 17-13975

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL ANTHONY CONAGE,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cr-00028-GKS-GJK-1

_____

Before ED CARNES, JULIE CARNES, and CLEVENGER,* Circuit Judges.

PER CURIAM:

In his appeal before this Court, defendant Conage argued that the district court improperly considered as an Armed Career Criminal Act ("ACCA") predicate offense his prior conviction for drug trafficking under Florida Statutes § 893.135(1)(b)1. Conage contended that the particular Florida statute did not constitute a serious drug offense under the ACCA because the elements of that statute did not satisfy the requirements of the ACCA.

Resolution of Conage's argument required a determination of the elements of the Florida statute. We certified the question raised by Conage's challenge to the Florida Supreme Court. *See United States v. Conage*, 976 F.3d 1244, 1263 (11th Cir. 2020). The Florida Supreme Court has now answered this Court's certified question, holding that, for purposes of Florida's drug trafficking statute, "a completed purchase requires proof that the defendant both (1) gave consideration for and (2) obtained control of a trafficking quantity of illegal drugs," and further that "the requisite control [consists] of the same range of conduct that qualifies as constructive possession under federal law." *Conage v. United States*, __So. 3d__, 2022 WL 3651398, at *6 (Fla. Aug. 25, 2022).

---

* Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit, sitting by designation.

With this response, the Florida Supreme Court has resolved the sole issue that Conage raised before this Court on appeal: whether the district court properly relied on Conage's prior Florida drug trafficking conviction in determining that Conage had three prior serious drug offenses for purposes of the ACCA. Given the Florida Supreme Court's response, which is set out below, Conage's challenge to his sentence fails.

For that reason, and with great appreciation to the Florida Supreme Court for its assistance, we follow the Florida Supreme Court's decision and **AFFIRM** Conage's conviction and sentence.[1]

---

[1] Conage's recent Motion to Stay Appellate Proceedings is **DENIED**.

# Supreme Court of Florida

————

No. SC20-1441

————

**MICHAEL ANTHONY CONAGE,**
Appellant,

vs.

**UNITED STATES OF AMERICA,**
Appellee.

August 25, 2022

MUÑIZ, C.J.

The U.S. Court of Appeals for the Eleventh Circuit has certified to us a question about the meaning of the word "purchase" in Florida's drug trafficking law. The court asks whether a completed purchase of illegal drugs necessarily entails the defendant purchaser's possession of those drugs, as federal law defines possession. We conclude that it does, and in doing so we reject the argument that a purchase is necessarily complete as soon as the would-be purchaser pays for the drugs.

I.

In the underlying federal case, Michael Conage was convicted of a gun possession crime and then sentenced to a mandatory prison term under the Armed Career Criminal Act. *United States v. Conage*, 976 F.3d 1244, 1253 (11th Cir. 2020); 18 U.S.C. § 924(e)(1). To impose that sentence, the trial court first had to conclude that Conage had three previous convictions for a "serious drug offense" as defined by the ACCA. One of the three convictions that the trial court counted against Conage was a 2006 conviction for trafficking in cocaine in violation of section 893.135(1)(b)1., Florida Statutes (2006). Conage appealed his sentence to the Eleventh Circuit, arguing that it was error to deem that conviction an ACCA predicate offense.

The ACCA defines a "serious drug offense" as one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). To determine whether a previous conviction meets that definition, federal courts use what they call a "categorical approach." *Conage*, 976 F.3d at 1250. That approach considers "only the fact of the defendant's conviction and the statutory

- 2 -

definition of the state offense at issue, rather than the facts underlying the defendant's conviction." *Id.* So, for purposes of applying the ACCA to Conage, the factual details supporting Conage's 2006 Florida drug trafficking conviction do not matter— what matters is how section 893.135(1) defines the crime of drug trafficking.

Under section 893.135(1), a person commits drug trafficking when he knowingly (1) "sells," (2) "purchases," (3) "manufactures," (4) "delivers," (5) "brings into this state," or (6) is "in actual or constructive possession of" a trafficking quantity of illegal drugs.[1] The "categorical approach" means that, for a Florida drug trafficking conviction to qualify as an ACCA predicate offense, each of these six ways of committing drug trafficking under section 893.135(1) must meet the ACCA's definition of a "serious drug offense." *Conage*, 976 F.3d at 1251.

Conage's appeal to the Eleventh Circuit focuses on only one of the statute's six forms of drug trafficking, trafficking by purchase.

---

1. Section 893.135(1) lists separately each kind of drug that is subject to the prohibition on drug trafficking. *See* § 893.135(1)(a)-(*l*), Fla. Stat. Within each drug category, the greater the trafficking quantity, the harsher the punishment. *Id.*

Recall that the ACCA defines a "serious drug offense" as one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Relevant here is the definition's reference to possessing with intent to distribute a controlled substance. Eleventh Circuit precedent says that possession of a trafficking quantity of illegal drugs implies an intent to distribute those drugs. *Conage*, 976 F.3d at 1253 (citing *United States v. James*, 430 F.3d 1150, 1154 (11th Cir. 2005)). So, trafficking by purchase under section 893.135(1) can meet the ACCA definition of a "serious drug offense" if a completed purchase necessarily entails the defendant's possession of the purchased drugs. In his federal appeal, Conage has contended that a purchase is complete upon payment by the defendant and that therefore a completed purchase does not require proof that the defendant possessed the purchased drugs.

The Eleventh Circuit has determined that it cannot resolve Conage's appeal without additional guidance about how Florida law defines a completed purchase in this context. The court's uncertainty is understandable. Section 893.135(1) does not define the term "purchase," and Florida court decisions touching on

- 4 -

trafficking by purchase are sparse and unilluminating.[2]  Moreover, the stakes in this case extend far beyond Conage.  According to the Eleventh Circuit, the answer to the certified question has "enormous" implications for federal law.  *Conage*, 976 F.3d at 1248. If Conage's position on the meaning of "purchase" is correct, "then *no* Florida drug trafficking conviction under § 893.135(1) can *ever* qualify as an ACCA predicate offense, notwithstanding that statute's status as Florida's most serious criminal drug statute."  *Id.*

To help us answer the certified question, we have received briefing and oral argument from Conage and from the United States.  After we heard oral argument, the State of Florida submitted a brief supporting Conage.  Conage and the United States then filed responses to the State's brief.

---

2.  We acknowledge Conage and the State's reliance on several district court of appeal cases holding that double jeopardy principles are not violated if a defendant is convicted of purchasing and possessing the same illegal drugs in a single transaction. *Milhouse v. State*, 37 So. 3d 862 (Fla. 2d DCA 2010); *Psihogios v. State*, 544 So. 2d 283 (Fla. 4th DCA 1989); *State v. Houghtailing*, 704 So. 2d 163 (Fla. 5th DCA 1997).  These cases have no persuasive force, because in none did the deciding court define or analyze what constitutes either a purchase or possession.

II.

The certified question is:

> How does Florida law define the term "purchase" for purposes of Florida Statutes § 893.135(1)? More specifically, does a completed purchase for purposes of conviction under § 893.135(1) require some form of possession—either actual or constructive—of the drug being purchased?

*Id.* at 1263. The Eleventh Circuit explains that its focus "is on the conduct that the 'purchasing' element of [Florida's drug trafficking law] prohibits." *Id.* at 1252. The court needs to know "what the State must prove in order to convict a defendant of purchasing a trafficking quantity of" illegal drugs. *Id.* at 1247.

Before explaining our answer to the certified question, we address a threshold issue about Florida's law of statutory interpretation. The United States encourages us to use an approach that is often linked to a passage from our Court's decision in *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)). There we said that "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and

- 6 -

construction." In practice, following this maxim often leads the interpreter to focus on a disputed word or phrase in isolation; the maxim also leaves the interpreter in the dark about how to determine whether a particular word or phrase has a clear meaning.

We believe that the *Holly* principle is misleading and outdated. More recently our Court has said that judges must "exhaust 'all the textual and structural clues' " that bear on the meaning of a disputed text. *Alachua County v. Watson,* 333 So. 3d 162, 169 (Fla. 2022) (quoting *Niz-Chavez v. Garland,* 141 S. Ct. 1474, 1480 (2021)). That is because "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997).

Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end (recognizing that some canons, like the rule of lenity, by their own terms come into play only after other interpretive tools have

- 7 -

been exhausted). It would be a mistake to think that our law of statutory interpretation requires interpreters to make a threshold determination of whether a term has a "plain" or "clear" meaning in isolation, without considering the statutory context and without the aid of whatever canons might shed light on the interpretive issues in dispute.[3]

With that, we turn to our analysis of the certified question.

A.

We emphasize at the outset that there are two aspects to the Eleventh Circuit's question. The first is wholly a matter of state law: what "purchase" means in the context of section 893.135(1). The second involves federal law: whether the conduct that is a purchase under section 893.135(1) necessarily entails the defendant's possession of the purchased drugs *as federal law*

---

3. The opinion concurring in result notes that this Court cited *Holly* in a recent decision involving statutory interpretation, *Shim v. Buechel*, 339 So. 3d 315 (Fla. 2022). But our analysis in *Shim* did not address the role of traditional rules of statutory interpretation in determining whether a statute has a plain or clear meaning. We cited *Holly* only in support of our refusal to "reach policy considerations" in the face of a statute that we deemed unambiguous. *Id.* at 317. Notably, the opinion concurring in result makes no attempt to defend the *Holly* principle on the merits.

*defines possession.*[4]  We think the clearest way to present our analysis is to start by explaining possession as a matter of federal law.

The Eleventh Circuit informs us that, under federal law, " 'possession' includes both actual and constructive possession." *Conage*, 976 F.3d at 1255.  The former occurs when a person has "direct physical control" over the item in question.  *Id.*  By contrast, "constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control."  *Id.* (quoting *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009)).  Another Eleventh Circuit precedent says that "[a] defendant has constructive possession of a substance when he has some form of control other than direct physical control."  *United States v. Edwards*, 166 F.3d 1362, 1364 (11th Cir. 1999).  For example, "a defendant has constructive possession of a substance if it is being held by an agent of the defendant."  *Id.*

---

4.  The Eleventh Circuit said that its task was to decide "whether 'purchase' under Florida Statutes § 893.135(1) involves 'possession' as federal law under the ACCA defines that term." *Conage*, 976 F.3d at 1255.

Understanding how federal law defines possession helps to frame the parties' disagreement over the proper interpretation of section 893.135(1). According to Conage, the government "can prosecute an individual for 'purchasing' under section 893.135(1) the moment he hands over money for drugs, even before he takes possession." The United States responds that a purchase under section 893.135(1) is not complete until the defendant has obtained the purchased drugs, and that possession is therefore an inherent requirement for trafficking by purchase. We believe that the United States is right, both as a matter of ordinary meaning and in light of the statutory context.

First, consider the ordinary meaning of the word "purchase." When a contested term is undefined in statute or by our cases, we presume that the term bears its ordinary meaning at the time of enactment, taking into consideration the context in which the word appears.[5] And we typically look to dictionaries for the best evidence of that ordinary meaning.

_____

5. No one before us argues that "purchase" is a legal term of art or that it bears a specialized meaning.

- 10 -

Our research shows that dictionaries are essentially uniform in how they define the word "purchase." The American Heritage Dictionary definition is typical: "purchase" means "[t]o obtain in exchange for money or its equivalent; buy." *Purchase, The American Heritage Dictionary of the English Language* (3rd ed. 1992). In turn, that same dictionary defines "obtain" to mean "[t]o succeed in gaining possession of, as the result of planning or endeavor; acquire." *Obtain, The American Heritage Dictionary, supra*; *see also Purchase, Webster's Third New International Dictionary Unabridged* (1966 ed.) ("to get into one's possession; to obtain . . . by paying money or its equivalent"); *Obtain, Webster's, supra* ("to gain or attain possession or disposal of . . .").

As a matter of ordinary meaning, then, a purchase entails both giving consideration for and obtaining the good being purchased. We do not think it would be reasonable to apply this definition so literally as to require proof that a defendant personally obtained actual, physical possession of the purchased item. But we do think that a defendant cannot be said to have obtained an item until he has control over that item—in other words, until he has gained constructive possession as federal law understands that

- 11 -

concept.  Here the United States's position is consistent with the ordinary meaning of the word "purchase"; Conage's position, because it focuses only on the payment aspect of a purchase, is not.

Second, consider the word "purchase" in light of how this Court has defined a "sale" in the context of chapter 893.  In *Milazzo v. State*, 377 So. 2d 1161, 1163 (Fla. 1979), we said that, along with consideration, "delivery is one of the essential elements of a sale." This precedent was on the books when the Legislature criminalized trafficking by purchase in 1987.  Given that precedent, we think that an informed reader of the Legislature's work product, and the Legislature itself, would have understood a purchase to require both the giving of consideration and the buyer's obtaining some form of control over the illegal drugs.  Otherwise, there would be disharmony between the words "purchase" and "sell" in the same statute.

Third, consider the word "purchase" together with the company it keeps in section 893.135(1).  The statute identifies five other ways of committing the crime of drug trafficking: to sell, to manufacture, to deliver, to bring into the state, or to possess a trafficking quantity of illegal drugs.  Set aside for a moment the

- 12 -

technical elements of each form of drug trafficking. As a practical matter, each involves a defendant who has a degree of control over the illegal drugs being trafficked. The United States's understanding of "purchase" would preserve the statute's internal consistency. Conage's proposed definition would make the word "purchase" an outlier among neighboring and related terms in the statutory text.

We thus conclude that, for purposes of section 893.135(1), a completed purchase requires proof that the defendant both (1) gave consideration for and (2) obtained control of a trafficking quantity of illegal drugs. And we understand the requisite control to consist of the same range of conduct that qualifies as constructive possession under federal law, including control through an agent of the defendant.

B.

We have carefully considered the counterarguments offered by Conage and the State, but we find them unconvincing.

Conage acknowledges that "the plain and ordinary meaning of 'purchase' is to obtain or acquire something through an exchange." But he says that it is common in everyday speech to use the word

- 13 -

"purchase" to refer to paying for and obtaining an item for someone else. That is true but irrelevant. Even if the purchaser in that scenario never assumes actual possession of the purchased item, he still will have exercised control (federal law constructive possession) over the item for purposes of directing its transfer or delivery to the recipient.

Relatedly, Conage invokes the example of a "middleman" whose role is merely to give cash for drugs on behalf of another. Depending on the facts of a particular case, the middleman would either be a copurchaser (if he gets joint control over the drugs) or an aider and abettor of the actual purchaser. Either way he would be liable as a principal under our definition of the word "purchase" in section 893.135(1).

Conage also invokes everyday references to a consumer who "purchases" an item online and then awaits its delivery. This appeal to our linguistic intuition raises a fair point, but it is not strong enough to carry the day. For one thing, typical speakers would likely give varying answers to the question whether a commercial purchase is *complete* before the consumer obtains control over the purchased item. More importantly, our Court

- 14 -

implicitly rejected analogous reasoning when it concluded that a sale in the context of chapter 893 requires both consideration and delivery. *See Milazzo*, 377 So. 2d at 1163. It would not be unusual in everyday speech to say that a vendor has "sold" an item before delivering it, but that did not dictate our definition of a sale for purposes of Florida's criminal drug law.

Like Conage, the State acknowledges that, as a matter of ordinary meaning, "to purchase, one must acquire or obtain something through an exchange." But the State argues that "one can 'acquire' or 'obtain' the *right* to control a good before assuming such control, like when one orders a good from an online retailer and awaits its arrival." This argument, too, suffers from an inconsistency with this Court's definition of a sale in this context— we did not say in *Milazzo* that a sale of illegal drugs is complete when the seller takes on an *obligation* to deliver an item. More fundamentally, legitimate commercial transactions take place against a backdrop of laws that give rise to enforceable rights and duties, making it possible to speak of a predelivery "right" to obtain an item. The same cannot be said of the world of illegal drug trafficking. *Cf. United States v. Manzella*, 791 F.2d 1263, 1266 (7th

- 15 -

Cir. 1986) (Control for purposes of constructive possession exists where a defendant has "the right (not the legal right, but the recognized authority in his criminal milieu) to possess" the drugs.) (Posner, J.).

Finally, Conage and the State point to the statutory history of section 893.135(1). As we have explained, the drug trafficking statute lists six ways of committing the crime of drug trafficking. Five of those ways (including trafficking by possession) appeared in the initial version of Florida's drug trafficking law in 1979. Ch. 79-1, § 1, Laws of Fla. The Legislature added trafficking by purchase in 1987. Ch. 87-243, § 5, Laws of Fla. Conage and the State argue that the 1987 amendment would be without practical effect if, to prove a completed purchase under section 893.135(1), the government would also have to prove possession.[6]

The problem with this argument is that Conage and the State assume an overly narrow definition of possession, one based on

---

6. To be clear, even Conage and the State do not argue that the United States's interpretation of the word "purchase" renders it superfluous in the sense of meaning the same thing as possession. By anyone's definition, a purchase involves consideration and possession does not.

- 16 -

their understanding of Florida rather than federal law. Conage says that, as a matter of Florida law, constructive possession of contraband occurs when a defendant "knows of its presence on or about his premises and can exercise dominion and control over it." Similarly, the State cites the 2016 version of Florida's standard jury instructions for the proposition that constructive possession requires proof that the defendant is aware of the presence of the substance and has the ability to control it, and that the substance is in a place over which the defendant has control.[7]

---

7. To explain Florida law on possession, the State relies on *In re Standard Jury Instructions in Criminal Cases–Report No. 2015-03*, 191 So. 3d 291, 310 (Fla. 2016). However, those jury instructions were materially amended in 2018 and 2019. *See In re Standard Jury Instructions in Crim. Cases–Rep. 2017-03*, 238 So. 3d 182 (Fla. 2018); *In re Standard Jury Instructions in Crim. Cases–Rep. 2018-12*, 272 So. 3d 243 (Fla. 2019). Our current jury instructions state that:

> To prove (defendant) knowingly possessed a substance, the State must prove beyond a reasonable doubt that [he] [she] a) knew of the existence of the substance and b) intentionally exercised control over that substance.

> Control can be exercised over a substance whether the substance is carried on a person, near a person, or in a completely separate location. Mere proximity to a substance does not establish that the person intentionally exercised control over the substance in the absence of additional evidence. Control can be

- 17 -

This is not the place to determine whether Conage and the State have accurately described Florida law on constructive possession (either as it existed in 1987 or as it is today), and our decision here should not be read as weighing in on that issue. The key point is that our holding here is *not* that a completed purchase requires proof of the narrow form of constructive possession that Conage and the State have identified. Instead, we are defining the word "purchase" in section 893.135(1) as inherently requiring the broader form of control-based constructive possession recognized in federal law. If Conage and the State are correct in their understanding of what is required to prove constructive possession under section 893.135(1) as a matter of *Florida law*—in other words, if Florida law constructive possession has to do with the defendant's knowledge of the drugs' presence and with where the drugs are found—then the Legislature's 1987 addition of trafficking by purchase *did* materially alter the legal status quo. Specifically,

---

established by proof that (defendant) had direct personal power to control the substance or the present ability to direct its control by another.

Fla. Std. Jury Instr. (Crim.) 25.7(a).

- 18 -

the Legislature would have criminalized conduct (consideration plus obtaining control, without regard to the defendant's relationship to the place where the drugs are found) that would not have been captured by the statute's reference to possession (as Conage and the State understand Florida law possession).[8]

In any event, the Legislature appears to have been willing to tolerate some redundancy in its design of section 893.135(1). As we have explained, the statute lists sale and delivery as separate forms of drug trafficking, even though proof of a completed sale requires proof of delivery. Formal elements aside, there also is potential overlap between possession and delivery, and between possession and bringing drugs into the state—even though section 893.135(1) lists each of these as a distinct way to traffic drugs. Rather than strain to adopt Conage and the State's definition of trafficking by purchase, we would leave it to the Legislature explicitly to adopt a

---

8. In the interest of completeness, we note that, four years before the Legislature added trafficking by purchase in 1987, our Court held that "[t]o establish constructive possession, the state must show that the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband." *Brown v. State*, 428 So. 2d 250, 252 (Fla. 1983), *superseded in part by statute*, ch. 2002-258, § 1, Laws of Fla.

- 19 -

specialized definition saying that a purchase is complete upon payment, if the Legislature wishes to do so.

## C.

Finally, there is the rule of lenity. Through section 775.021(1), Florida Statutes, the Legislature has elevated lenity from a canon of construction to a statutory command. That statute tells us to construe provisions in the criminal code "strictly." § 775.021(1), Fla. Stat. (2021). And the Legislature further instructs that, "when the language [of a statute] is susceptible to differing constructions, it shall be construed most favorably to the accused." *Id.* In Florida, the rule of lenity is a default rule that comes into play at the end of the interpretive process. *See Paul v. State*, 129 So. 3d 1058, 1064 (Fla. 2013) (rule of lenity applies "if the statute remains ambiguous after consulting traditional canons of statutory construction.").

Conage says that the rule of lenity requires us to resolve ties in his favor, because he is the defendant in the underlying federal case. We disagree. The reference in section 775.021(1) to "the accused" has to mean a person being prosecuted for allegedly violating a criminal law of Florida. Here that would be a generic

- 20 -

defendant accused of trafficking by purchase, not Conage in his contest with the United States.

We believe that the United States has the better reading of section 893.135(1) without resorting to the rule of lenity. But at most, Conage has proposed a plausible interpretation of section 893.135(1) and fought the United States to a draw. In that case, the rule of lenity would tell us to adopt the United States's interpretation of the statute. That interpretation (by requiring consideration plus control) makes proof of a completed purchase under section 893.135(1) more difficult than Conage's consideration-only interpretation, and so favors the accused in a prosecution to enforce the statute.

## III.

To sum up: for purposes of section 893.135(1), a completed purchase requires proof that the defendant both (1) gave consideration for and (2) obtained control of a trafficking quantity of illegal drugs. We understand the requisite control to consist of the same range of conduct that qualifies as constructive possession under federal law, including control through an agent of the defendant. In answering the Eleventh Circuit's certified question,

- 21 -

we do not purport to predict the myriad ways that the State could prove control in a prosecution for trafficking by purchase under section 893.135(1).

It is so ordered.

CANADY, POLSTON, LAWSON, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

Although I agree with the majority's conclusion that the word "purchase," as set forth in section 893.135(1), Florida Statutes, requires the defendant purchaser to possess the purchased drugs— and thus, I concur in the result—I find it curious that the majority now deems, as "misleading and outdated," the longstanding principle in *Holly v. Auld*, 450 So. 2d 217 (Fla. 1984).

As recently as May 26, 2022, in a unanimous opinion, this Court quoted the same principle it now finds untenable, and it did so without questioning its viability. *See Shim v. Buechel*, 339 So. 3d 315, 317 (Fla. 2022) ("*See State v. Peraza*, 259 So. 3d 728, 730 (Fla. 2018) (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)

- 22 -

('[W]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' "))).

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 17-13975

A. Fitzgerald Hall, Federal Defender, James T. Skuthan, First Assistant Federal Defender, Conrad Benjamin Kahn, Interim Chief of Appeals, Katherine Howard, Research and Writing Specialist, Federal Defender's Office, Orlando, Florida,

   for Appellant

Roger B. Handberg, United States Attorney, David P. Rhodes, Chief, Appellate Division, Holly L. Gershow, Assistant United States Attorney, Appellate Division, Middle District, Tampa, Florida,

   for Appellee

Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and David M. Costello, Assistant Solicitor General, Tallahassee, Florida,

   for Amicus Curiae State of Florida