[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10042

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHARLES EDWARD ROWE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cr-00058-TKW-1

_____

Before NEWSOM, BRASHER, and ED CARNES, Circuit Judges.

BRASHER, Circuit Judge:

Charles Rowe pleaded guilty to three federal crimes and was sentenced to 360 months in prison. Previously, he had been convicted of cocaine trafficking under Florida law. The district court determined that this conviction was a controlled substance offense triggering a sentencing enhancement under the career offender sentencing guideline. Rowe appealed, challenging the legitimacy of his guilty plea and his enhanced sentence.

The main question in this appeal is whether we are bound to follow our conclusion in *United States v. Shannon,* 631 F.3d 1187 (11th Cir. 2011), that cocaine trafficking under Florida law is not a controlled substance offense under the career offender guidelines. The answer lies at the intersection of two rules. First, the prior panel precedent rule. Under the prior panel precedent rule, we must follow our earlier decisions unless they have been overturned or abrogated by this Court *en banc*, by the United States Supreme Court, or by the relevant state supreme court on a matter of state law. Second, the categorial approach. Whenever we determine whether a state law crime counts as strike under the career offender guidelines, we must address the crime as a category. When the previous conviction is a state crime, the categorical approach means we are answering, either explicitly or implicitly, two questions. One question is a matter of state law: what are the elements of the least culpable conduct that can sustain a conviction under a state statute? The other concerns federal law: does that prohibited

conduct count as a predicate offense under the federal guideline or statute? If the elements of the state conviction match the offense described by the federal statute or guideline, then we count the conviction as a strike, which can lead to a higher sentence.

In *Shannon*, we held that the Florida crime of cocaine trafficking is not a controlled substance offense under the career offender guidelines. *Id.* at 1189–90. But the Florida Supreme Court has since told us that the way we answered the state law question in *Shannon* was wrong. *See Conage v. United States*, 346 So. 3d 594 (Fla. 2022) (*Conage II*). Because the state law has changed, our federal law conclusion under the categorical approach is no longer valid and our decision in *Shannon* is no longer binding. Under the Florida Supreme Court's decision in *Conage II*, we conclude that cocaine trafficking under Florida law is a controlled substance offense under the career offender guideline and the enhanced sentence was valid. Because we also conclude that the district court properly substantiated and accepted Rowe's guilty plea, we affirm his conviction and sentence.

## I.

In the summer of 2021, police executed a warrant to search a motel room. Prior to executing the warrant, police observed Rowe and another man enter the room, and the motel manager provided a registration card for the room that listed Rowe as the guest. Police searched the room with Rowe present. There, they found two loaded pistols on a nightstand along with Rowe's cellphone. They also recovered multiple containers of marijuana,

cocaine, methamphetamine, ecstasy, and distribution paraphernalia including a digital scale, a box of plastic baggies, and a knife with cocaine residue on the blade. Rowe admitted to purchasing the firearms "because he sells narcotics and to protect himself from being robbed," and admitted that he traded crack cocaine for one of the guns. Rowe had previously been convicted of multiple felonies, including cocaine trafficking. *See* Fla. Stat. § 893.135(1)(b).

A grand jury later indicted Rowe on three counts: (1) possession with the intent to distribute 500 grams or more of cocaine, marijuana, and a substance containing methamphetamine; (2) possession of a firearm in furtherance of the drug trafficking crime charged in Count One; and (3) possession of a firearm by a convicted felon.

Rowe and the government eventually reached a plea agreement. As part of the agreement, Rowe agreed to plead guilty to all three counts "because [he] is in fact guilty of the charges," "substantial evidence exists to support the charges," and "the government would present evidence to support the charges beyond a reasonable doubt." The agreement also indicated the maximum and minimum penalties Rowe faced for each count. Shortly thereafter, Rowe consented to entering his guilty plea before a magistrate judge who then conducted a plea colloquy.

During the plea colloquy, Rowe testified that he was 39 years old with an 11th grade education, suffered from no mental or physical illnesses, was not on any medications, and had not consumed drugs or alcohol in the preceding 24 hours. He also testified

that no one had threatened him or made promises to him in order to induce his plea. He indicated that he understood his rights, that he was waiving those rights by pleading guilty, that he understood he would not be able to contest or withdraw his guilty plea once the plea was accepted, and that he had an opportunity to discuss the charges and his plea with his attorney. He also testified that he read the factual basis for his guilty plea, that it was "true and correct," and that it was "sufficient to support a finding of guilt on the three charges in the indictment." Lastly, the magistrate judge discussed the potential penalties associated with a guilty plea for each count and noted that the sentence "may be different from any estimate that anyone has provided." Rowe testified that he understood and had an opportunity to discuss the sentencing guidelines with his attorney. Ultimately, Rowe reiterated that he was pleading guilty to all three counts because he was, "in fact, guilty of those charges." The district court then accepted Rowe's guilty plea after receiving the magistrate judge's recommendation.

The probation office filed a presentence investigation report. In that report, the probation office recommended that Rowe's sentence be enhanced under the Armed Career Criminal Act and the career offender guidelines due to his prior convictions. *See* 18 U.S.C. § 924(e); U.S.S.G. § 4B1.1. In particular, the probation office noted that Rowe had at least two predicate convictions, including one for cocaine trafficking, that combined with his present offense qualified him as a career offender under the guidelines. *See* U.S.S.G. § 4B1.1. Based on the guidelines, Rowe faced 262 to 327 months' imprisonment for counts one and three. Additionally, he faced a

60-month term for count two under the Armed Career Criminal Act, bringing the effective guidelines range to 322 to 387 months.

Rowe objected to the report. He argued that his previous conviction under Florida law for trafficking cocaine does not qualify as a "controlled substance offense," and therefore he does not have the necessary predicate offenses to qualify as a career offender. He also observed that this Court recently certified a question to the Florida Supreme Court to resolve uncertainty about the elements of trafficking under Florida law. *See United States v. Conage*, 976 F.3d 1244, 1251 (11th Cir. 2020) (*Conage I*). Therefore, he moved to continue sentencing until the Florida Supreme Court could answer the question. The government did not oppose the motion, and the district court held the sentencing in abeyance.

In the meantime, Rowe—while represented by counsel—filed several *pro se* motions to relieve counsel, change his plea, and dismiss Count Two. At about the same time, Rowe's counsel also filed a motion to withdraw as counsel. The district court denied Rowe's motion to relieve counsel and counsel's motion to withdraw but struck the rest of the motions because they were *pro se* filings that Rowe submitted while represented by counsel.

A few months later, the Florida Supreme Court answered our certified question. *See Conage II*, 346 So. 3d 594. After we issued our related opinion, *see United States v. Conage*, 50 F.4th 81 (11th Cir. 2022) (*Conage III*), the district court rescheduled Rowe's sentencing hearing. Rowe then renewed his objection that he was not a career offender under the guidelines because his previous Florida cocaine

trafficking conviction was not a "controlled substance offense" and the government opposed that renewed objection, citing *Conage II*.

Ultimately, the district court counted the previous cocaine conviction as a strike under the career offender guidelines and applied the enhanced sentence. It sentenced Rowe to a 300-month term in prison for Count One, a concurrent 120-month term in prison for Count Three, and a consecutive 60-month term in prison for Count Two. Rowe timely appealed his conviction and sentence.

## II.

We review *de novo* whether a prior conviction qualifies as a controlled substance offense under the sentencing guidelines. *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019). But we apply different standards to the various guilty plea issues. The district court's "factual finding that the requirements of Rule 11 were satisfied when it accepted the defendants' pleas is subject to the clearly erroneous standard of review." *United States v. Lopez*, 907 F.2d 1096, 1099 (11th Cir. 1990). When a defendant fails to object to a Rule 11 violation during a plea colloquy, we review the alleged violation for plain error. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). And we review the denial of a request to withdraw a guilty plea for abuse of discretion. *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003).

**III.**

*A.*

We start with Rowe's arguments about his guilty plea. Rowe argues that the district court erred by accepting his guilty plea without a sufficient factual basis and abused its discretion by denying his motion to withdraw his guilty plea. Both arguments fail. The magistrate judge conducted a thorough colloquy to ensure that Rowe entered his plea knowingly and voluntarily and that the plea was supported by the evidence before the district court accepted the plea. And the court struck Rowe's motion to withdraw his guilty plea because it was a *pro se* motion that Rowe filed while represented by counsel. Given these circumstances, we cannot say that the district court erred on either issue.

As an initial matter, the government argues that Rowe waived his sufficiency challenge by pleading guilty. *See United States v. Evans*, 478 F.3d 1332, 1339 n.7 (11th Cir. 2007) ("To the extent that [the defendant] argues that his conduct did not meet the elements of the charges, he waived this argument with his plea."). But even if Rowe did not waive this challenge, his argument still fails because the plea was amply supported by the record.

When a district court accepts a guilty plea, it must conduct a plea colloquy to ensure that the core concerns of Rule 11 of the Federal Rules of Criminal Procedure have been met. *Freixas*, 332 F.3d at 1318. To that effect, the district court must verify three conditions: "(1) the guilty plea must be free from coercion; (2) the

defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *Id.* (quotation marks and citations omitted); *see* Fed. R. Crim. P. 11. Based on Rowe's responses at the plea colloquy, the record reflects that no one coerced Rowe into pleading guilty and that Rowe understood the nature of the charges and the consequences of pleading guilty. And importantly, Rowe acknowledged that he was pleading guilty "because [he] [was] in fact guilty of the charges," "substantial evidence exists to support the charges," and "the government would present evidence to support the charges beyond a reasonable doubt." In light of these statements, the district court properly accepted Rowe's guilty plea.

In addition to Rowe's own acknowledgements, the evidence strongly supports his conviction. Under 18 U.S.C. § 924(c)(1)(A), it is unlawful for any person to "possess[] a firearm" "in furtherance of [a drug trafficking crime]." Rowe does not contest that he possessed a firearm but argues that there is insufficient evidence that he possessed the firearm "in furtherance of" his drug offense. The record reflects otherwise. The factual proffer, signed by Rowe, indicates that law enforcement searched a motel room registered to Rowe and found two loaded pistols; 26 additional rounds of ammunition; multiple containers of marijuana, powder and crack cocaine; methamphetamine; ecstasy pills; drug paraphernalia; a digital scale; and a box of plastic baggies. And Rowe admitted to purchasing the firearms "because he sells narcotics" and sought "to protect himself from being robbed." The connection between the gun and Rowe's drug offense could not be clearer.

Rowe's argument that the district court abused its discretion by denying his motion to withdraw his guilty plea is also lacking. To be clear, the district court did not deny Rowe's motion. Instead, the district court struck the motion because he filed it *pro se* even though he was represented by counsel. Such a filing is prohibited under the local rules. N.D. Fla. Loc. R. 11.1(F) ("A party who is represented by an attorney must appear only through the attorney; the party may not file documents or participate in a trial or hearing on the party's own behalf."). This Court gives "great deference to a district court's interpretation of its local rules." *Ruiz v. Wing*, 991 F.3d 1130, 1144 (11th Cir. 2021) (citing *Clark v. Hous. Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992)); *see also United States v. LaChance*, 817 F.2d 1491, 1498 (11th Cir. 1987) ("[T]he right to counsel and the right to proceed *pro se* exist in the alternative and the decision to permit a defendant to proceed in a hybrid fashion rests in the sound discretion of the trial court."). Because the district court struck the *pro se* motion in accordance with the local rules, we cannot say it abused its discretion.

*B.*

Next, we turn to Rowe's arguments about his 360-month sentence. Rowe argues that his previous cocaine trafficking conviction is not a controlled substance offense for the purposes of the career offender sentencing enhancement. According to Rowe, his previous conviction under Florida law does not qualify as a predicate controlled substance offense because a jury could convict him for purchasing a trafficable quantity of cocaine without necessarily

possessing it. *Compare* Fla. Stat. § 893.135(1)(b) (A defendant is guilty of cocaine trafficking if he "knowingly sells, purchases, manufactures, delivers, or brings into this state, or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine.") *with* U.S.S.G. § 4B1.2(b) (defining "controlled substance offense," in relevant part, as a felony under state law that prohibits "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense"). Therefore, he says, the conviction does not qualify as a predicate offense.

We resolved the exact same issue in *Shannon* and held that a conviction under Fla. Stat. § 893.135(1)(b) does not count as a strike under the career offender guideline. *Shannon*, 631 F.3d at 1189–90. We reasoned that, under Florida law, "purchasing a distributable quantity of drugs does not necessarily give rise to actual or constructive possession." *Id.* But since then, the Florida Supreme Court explained that a defendant "purchase[s]" cocaine under this statute even if he only "obtained control of a trafficking quantity of illegal drugs," which "consist[s] of the same range of conduct that qualifies as constructive possession under federal law[.]" *Conage II*, 346 So. 3d at 600.

Rowe argues that we remain bound by our decision in *Shannon* unless and until we overrule it *en banc*. According to the government, *Shannon* turned on an issue of state law that is inconsistent with the Florida Supreme Court's decision in *Conage II*, and we are bound to follow state law as determined by the state

supreme court no matter our prior precedents. We agree with the government.

1.

We'll start with some background legal principles. We are bound by this Court's earlier decisions, but this prior precedent rule is not unlimited. On matters of federal law, we must follow our prior precedent "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010). On matters of state law, we must yield to the decision of a state supreme court when it tells us that our earlier interpretation of its state's law was wrong. *See United States v. Clarke*, 822 F.3d 1213, 1215 (11th Cir. 2016) ("Florida's highest court has plainly told us that our interpretation of Florida law in [our earlier decisions] was wrong. Therefore, our prior precedent rule must give way to the direction we've received from Florida's highest court."). The highest court of the state wields ultimate authority over interpretations of state law. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("The highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law[.]"); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) ("[T]he views of the state's highest court with respect to state law are binding on the federal courts.").

Sometimes, our precedents turn on a mixed question of federal law and state law. In a case like this one where we must determine whether a state conviction qualifies as a predicate offense

under federal law for sentencing enhancement purposes, we apply a categorical approach. *See Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020) ("We use the categorical approach to determine whether a state conviction qualifies as a predicate serious drug offense under the [Armed Career Criminal] Act or as a predicate controlled substance offense under the Guidelines."). That categorical approach begins with a state law question—what are the elements of the crime—and ends with a federal question—whether those elements match the federal statute or guidelines.

First, the state law question: what conduct is prohibited by state law? To answer this question, "we look only to the elements of the statute under which the defendant was convicted and not at the facts underlying the prior conviction," and "we presume that the prior conviction rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021) (internal quotation marks omitted). The "elements" we consider are the facts that the jury must find beyond a reasonable doubt to sustain a conviction. *Mathis v. United States*, 579 U.S. 500, 504 (2016).

After we define the state law prohibition, we turn to the federal law question: does the prohibited conduct count as a predicate offense under federal law? To answer this question, we "compare the elements of the [state] statute to the generic offenses" under federal law. *Kushmaul*, 984 F.3d at 1364. If the least culpable conduct under state law "has the same elements as the federal

definition, then it categorically qualifies as a predicate offense." *Hollis*, 958 F.3d at 1123.

Our formulation of the categorical approach—a state law question followed by a federal law question—is not unique. The Supreme Court and our sister circuits describe the process in essentially the same terms. *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("The meaning of 'physical force' in [the Armed Career Criminal Act] is a question of federal law, not state law. And in answering that question we are not bound by a state court's interpretation. . . . We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements."); *United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (applying Supreme Court precedent to interpret reentry guideline but "[t]o the extent that the statutory definition of the [underlying] offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law."); *United States v. Flores-Cordero*, 723 F.3d 1085, 1087 (9th Cir. 2013), *as amended on denial of reh'g* (Oct. 4, 2013) ("[W]hile interpretation of the federal statute is a question of federal law, the nature of a prior state conviction is determined by state law."); *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017) ("This inquiry requires application of both federal law and . . . state law. Federal law defines the meaning of [the predicate offense under the Armed Career Criminal Act]. . . . And state law defines the substantive elements of the crime of conviction.").

The important point for this case is that, because the categorical approach involves questions of both state and federal law, our decisions in this area may be abrogated by developments in the United States Supreme Court on federal law issues or a state supreme court on state law issues. When a state court disagrees with us about the elements of a state crime, then we may need to reconsider our decisions about whether that state crime is or is not a predicate offense under the categorical approach. *See United States v. Johnson*, 528 F.3d 1318, 1320 (11th Cir. 2008*), rev'd and remanded on other grounds*, 559 U.S. 133 (2010) ("If state law changes or is clarified in a way that is inconsistent with the state law premise of one of our earlier decisions [applying the Armed Career Criminal Act], the prior panel precedent rule does not bind us to follow our earlier decision."). Conversely, when the Supreme Court (or our court sitting *en banc*) disagrees with our precedent about the way the federal statutes themselves operate, then we may need to reconsider our decisions across the board. *See United States v. Hill*, 799 F.3d 1318, 1321–22 (11th Cir. 2015) (explaining that we were not bound by our prior precedent that "two Florida felony convictions qualified as predicate offenses under the residual clause of the ACCA" because the Supreme Court had since determined that the residual clause was unconstitutional); *Sneed*, 600 F.3d at 1332–33 (explaining that we were not bound by our prior precedents applying the categorical approach to potential predicate offenses under the Armed Career Criminal Act because an intervening Supreme Court decision abrogated those decisions).

2.

Having laid out these background principles, we now turn to *Shannon*. In *Shannon*, we reviewed whether a defendant's previous conviction for cocaine trafficking under Fla. Stat. § 893.135(1)(b)—the same state offense at issue here—qualified as a "controlled substance offense" that triggered a sentencing enhancement under the federal career offender guidelines—the same federal law at issue here. 631 F.3d at 1188. Resolving the state law question, we noted that Florida law "prohibit[s] the act of purchase" in addition to the sale, manufacturing, delivery, or transportation of a distributable amount of cocaine into Florida. *Id*. at 1189 (citing Fla. Stat. § 893.135(1)(b)). We identified the act of purchase as the least culpable conduct under the statute, and relying on Florida case law, we concluded that "purchasing a distributable quantity of drugs does not necessarily give rise to actual or constructive possession." *Id*.

Turning to the federal law question, we compared the minimum conduct prohibited under state law—purchasing, without necessarily possessing, a distributable amount of cocaine—to the conduct targeted by the federal guidelines. *Id*. We noted that a "controlled substance offense" under federal law is one that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or the possession of a controlled substance . . .with intent to manufacture, import, export, distribute, or dispense." *Id*. at 1188 (quoting U.S.S.G. § 4B1.2(b)). And "[s]ignificantly," we observed that "this definition does not include the act

of purchase." *Id.* We concluded that the state offense was not a categorical match for the federal controlled substance offense and did not trigger the career offender sentencing enhancement. *Id.*

The federal law that we applied in *Shannon* has not changed. But, since *Shannon*, the Florida Supreme Court has interpreted Fla. Stat. § 893.135(1)(b) differently. In *Conage I*, we reviewed whether a cocaine trafficking conviction under Florida law was a "serious drug offense" triggering an enhanced sentence under the Armed Career Criminal Act. 976 F.3d at 1247. The Armed Career Criminal Act defines a "serious drug offense" as one "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). To resolve the matter, we had to determine a state law issue: "whether the purchase of a trafficking quantity of cocaine under Florida's drug trafficking statute . . . involves the possession of that substance." *Conage I*, 976 F.3d at 1254 (emphasis omitted).

Rather than answer the question ourselves, we certified the question to the Florida Supreme Court: "[D]oes a completed purchase for purposes of conviction under § 893.135(1) require some form of possession—either actual or constructive—of the drug being purchased?" *Id.* at 1263. In *Conage II*, the Florida Supreme Court provided the definitive answer. 346 So. 3d 594. It explained "purchase" necessarily entails "obtaining the good being purchased" which occurs when the defendant "has gained constructive possession as federal law understands that concept." *Id.* at 599–600. Therefore, a conviction requires proof that the defendant

"obtained control of a trafficking quantity of illegal drugs" and that "the requisite control [consists] of the same range of conduct that qualifies as constructive possession under federal law." *Id.* at 600. Because purchasing 28 grams of cocaine necessarily entailed possession, we concluded that a cocaine trafficking conviction was a serious drug offense under the Armed Career Criminal Act. *Conage III*, 50 F.4th at 81–82; *see United States v. James*, 430 F.3d 1150, 1154–55 (11th Cir. 2005) ("Florida's drug trafficking statute necessarily infers an intent to distribute once a defendant possesses 28 grams or more."), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).

The Florida Supreme Court in *Conage II* interpreted the same state law at issue in *Shannon* and reached a different conclusion. Contrary to our holding in *Shannon*, cocaine trafficking under Fla. Stat. § 893.135(1)(b) requires a jury to conclude beyond a reasonable doubt that a defendant possessed a distributable quantity of cocaine to sustain a conviction. True, the federal question in the background of *Conage II* was different than in *Shannon*. The *Conage* cases concerned whether cocaine trafficking was a "serious drug offense" under the Armed Career Criminal Act whereas *Shannon* answered whether it was a "controlled substance offense" under the career offender guidelines. But this difference is immaterial for our purposes. Both *Conage II* and *Shannon* asked the same state law question: what conduct does Fla. Stat. § 893.135(1)(b) prohibit? Because the Florida Supreme Court in *Conage II* answered that state law question differently than we did in *Shannon*, it vitiated the state law element of our decision.

The Florida Supreme Court wields ultimate authority over interpretations of Florida law. *See West*, 311 U.S. at 236; *Wainwright*, 464 U.S. at 84. Therefore, the state law question presented in this case has been decided. According to *Conage II*, a cocaine trafficking conviction under Florida law requires proof of possession with the intent to distribute. 346 So. 3d at 599–600; *James*, 430 F.3d at 1155. *Shannon* says differently, but the state law conclusion in that precedent has been overruled.

3.

With the state law question answered, the only matter left for us to decide is whether the state offense is a "controlled substance offense" under the career offender guidelines. U.S.S.G. § 4B1.2(b). Both the plain language of the guidelines and our analogous precedents reveal that it is.

To resolve the federal law question, we must compare the elements of the least culpable conduct under the Florida statute—in this case, possessing a trafficable quantity of cocaine with the intent to distribute—to the "generic offenses" under federal law. *Kushmaul*, 984 F.3d at 1364. And according to the career offender guidelines, a "controlled substance offense" is one that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). As the undisturbed federal law component of *Shannon* explains, we interpret section 4B1.2(b) according to its plain language. 631 F.3d at 1189. Based on the plain

language, the answer could not be clearer: a law criminalizing cocaine possession with the intent to distribute obviously "prohibits the . . . possession of a controlled substance . . . with intent to . . . distribute." U.S.S.G. § 4B1.2(b).

Our case law in analogous circumstances confirms this reading. For example, our decisions interpreting U.S.S.G. § 2L1.2 indicate that Florida's cocaine trafficking prohibition is a controlled substance offense. Section 2L1.2 imposes a sentencing enhancement similar to the career offender guidelines that applies when a defendant has three or more misdemeanor convictions for "drug trafficking offenses." Under this statute, a "drug trafficking offense" is any offense under federal, state, or local law that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance" or "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *United States v. Orihuela*, 320 F.3d 1302, 1304 (11th Cir. 2003) (citing U.S.S.G. § 2L1.2, comment n.1(B)(iii)). Because "drug trafficking offense" is defined in "substantially the same way" as "controlled substance offense," decisions interpreting one are "analogous authorities" for interpreting the other. *Id*. And in *United States v. Madera-Madera*, we concluded that Georgia's similar drug trafficking prohibition was a drug trafficking offense under section 2L1.2. *See* 333 F.3d 1228, 1231–32 (11th Cir. 2003). The state law in that case prohibited the "possession of 28 grams or more of methamphetamine." O.C.G.A. § 16-13-31(e). Based on the statutory framework, we determined that 28 grams was enough to infer an intent to distribute. *Madera-Madera*, 333 F.3d at 1231–32. Later, we

described this statutory scheme as "nearly identical" to Florida's own statutory scheme prohibiting cocaine trafficking. *James*, 430 F.3d at 1154. Because both the state and federal law questions in *Madera-Madera* are so similar to the ones we face today, it provides strong support for our decision.

Our Armed Career Criminal Act precedents also suggest that Florida's cocaine trafficking prohibition is a controlled substance offense. In *United States v. James*, we considered whether Florida's cocaine trafficking law constituted a serious drug offense under the Armed Career Criminal Act. 430 F.3d at 1151–52. Although a "serious drug offense" under the Armed Career Criminal Act and a "drug trafficking offense" under section 2L1.2 feature slightly different definitions, we recognized the similarity between the Florida and Georgia drug laws, determined that there was "no reason to distinguish *Madera-Madera*," and concluded that the "reasoning in *Madera-Madera* controls this case." *Id*. at 1154–55; *see Conage III*, 50 F.4th at 82 (determining that cocaine trafficking is a serious drug offense under the Armed Career Criminal Act in light of the Florida Supreme Court's interpretation of the state law). In other words, we took a case interpreting section 2L1.2(b)(1)(A)(i)—an "analogous authority" for the career offender guidelines—and said that case controlled the outcome in an Armed Career Criminal Act case. It stands to reason that decisions interpreting similar language under the Armed Career Criminal Act, section 2L1.2(b)(1)(A)(i), or the career offender guidelines are generally persuasive authorities for future cases answering similar federal questions.

Based on the Florida Supreme Court's interpretation of Florida's cocaine trafficking prohibition, the plain language of the career offender guidelines, and our previous decisions interpreting similar federal statutory language, we conclude that Rowe's conviction is a "controlled substance offense" under U.S.S.G. § 4B1.2(b).

## IV.

We **AFFIRM**.